UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELEGANT MOMENTS, INC., EUGENE NEWTON, SR. and SUSAN NEWTON, <br><br> Plaintiffs, <br><br> vs. <br><br> NANCY DIMICK and KAREN LASKY, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 3:05-CV-00966 <br><br> JUDGE JAMES M. MUNLEY <br> MAG. JUDGE THOMAS M. BLEWITT |

## **PLAINTIFFS BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND CONTRARY TO MOTION TO COMPEL**

The history of this case was explained in the Magistrate Judge's

October 6, 2005, Report and Recommendation as follows:

    On or about November 1, 2003, Eugene Newton, Sr., as President of Elegant Moments, Inc., a Pennsylvania corporation, signed a Distributor Contract ("DC"). The Distributor Contract was entered into between Elegant Moments, Inc as Manufacturer and Lingerie 4 You International, Inc. ("LFYI"), referred to as Distributor, with its principal place of business in Las Vega, Nevada. (Doc. 1, Ex. A). Both Defendants Dimick and Lasky signed the Distributor Contract, the former as President and the latter as Vice President of Lingerie 4 You International, Inc. *(Id.,* p. 10). Neither Dimick nor Lasky signed the DC in their individual capacities. Plaintiffs aver that at all relevant times,

they believed that Lingerie 4 You International, Inc. was a legal and operating corporation.  Under the DC, Elegant Moments, as manufacturer, was to provide LFYI with intimate apparel and LFYI, as distributor, was in turn to distribute, to promote, and to sell the apparel to customers in Japan.

*   *   *   *

On or about March 24, 2005, Defendants filed a demand for Arbitration with the AAA, alleging that Plaintiffs breached the DC. (Doc. 1, Ex. B).  On May 2, 2005, Plaintiffs filed their answer to the arbitration demand of Defendants. (Doc. 1, Ex. C).  Plaintiffs responded in part that the Claimants, Dimick and Lasky were not parties to the DC and thus were not proper parties to the Arbitration, and that "Lingerie 4 You" was not a party to the DC and thus not a proper claimant in the Arbitration.  Plaintiffs asserted that only Lingerie 4 You, Inc ("LFYI") and Elegant Moments, Inc. were parties to the DC. (Doc. 1, Ex. C).  The Arbitration case then proceeded to an administrative conference and selection of an arbitrator. (Doc. 8, Ex. A, p. 3).

On May 2, 2005, counsel for Defendants in the Arbitration case faxed a letter to Plaintiffs' counsel indicating that Defendants' arbitration demand incorrectly named Lingerie 4 You as a claimant and indicated that the proper claimants in the Arbitration case were LFYI and Dimick and Lasky, its principals. (Doc. 1, Ex. D).  The fax letter also identified LFYI as a "Nevada general partnership" and not as a Nevada corporation. *(Id.).*

During the pendency of the Arbitration case, Plaintiffs instituted this Declaratory Judgment action in this Court and Petition to Stay the Arbitration. Plaintiffs seek this Court to determine if there exists a valid and enforceable contract between the parties named herein…   As mentioned, it is the Defendants' position that Arbitration is the recognized and agreed to method to determine if a breach of the DC occurred, and not this declaratory judgment action Plaintiffs filed with this

2

Court.  Defendants state that the Arbitration action has already been filed with the AAA pursuant to the binding provision in the DC with identical issues to the instant case and is proceeding, and that this arbitration action can provide Plaintiffs with all of the relief which they are seeking in the present case, including a declaratory judgment….

Plaintiffs argue that they would never had signed the DC with Defendants if they knew that LFYI was not a legal corporate entity and that Defendants fraudulently misrepresented to them that LFYI was indeed a legal corporation in order to dupe them into signing the DC. (Doc. 12, Ex. A, Newton Affidavit, ¶ 19.). Thus, Plaintiffs contend that the Defendants intentionally misrepresented the essential terms of the DC (i.e. fraud in the execution) and that Mr. Newton, as president of Elegant Moments, signed the DC without knowing material facts at the time.  Therefore, Plaintiffs argue that the DC, which they claim was executed without knowledge of the fraud perpetrated upon them by Defendants, is null and void. Hence, according to Plaintiffs, if the DC is null and void *ab initio,* then the Arbitration clause contained therein is also null and void and not enforceable against them. (Doc. 1, p. 7, ¶ 25.).  Plaintiffs filed the present Declaratory Judgment action for precisely this reason, *i.e.* to request this Court to find that the DC is null and void *ab initio* since they were fraudulently misled into executing it and misled by Defendants that LFYI was a legal entity and operating corporation when in fact it never actually existed. Plaintiffs also seek in the present case an order that Defendants be permanently barred from arbitrating any claims arising under the DC against them.

Report and Recommendation (10/6/05) at 3-5.

The  Report and Recommendation also explained:

> Basically, Plaintiffs assert that this Court should determine if there exists a valid and enforceable contract between the parties

3

> under the Distributorship Agreement or Contract ("DC"). Defendants claim that this issue is subject to the Arbitration case involving the parties which is already pending with the AAA and that Plaintiffs' present declaratory judgment action should be dismissed. Plaintiffs claim that Defendants fraudulently misrepresented them into believing that Lingerie 4 You International, Inc. ("LFYI") was a legal corporation when it never was a lawful entity and that this fraud in the execution voided the DC, including the arbitration clause, thus barring Defendants from compelling arbitration of this case under the Federal Arbitration Act ("FAA"), 9 U.S.C. §1-16. The issues with which we are now presented are whether the alleged fraudulent conduct of Defendants, which Plaintiffs claim preclude Defendants from compelling arbitration since this conduct rendered the DC void *ab initio,* should be considered by this Court and not by the arbitrator, and whether this determination should be made by this Court prior to the arbitration case proceeding any further. As discussed below, we find that the Plaintiffs' claim that the DC was rendered void ab *initio* must be resolved by this Court, and therefore, we shall recommend that Defendants' Motion to Dismiss be denied, that Plaintiffs' Motion for Injunction be granted, and that the Court stay the pending Arbitration proceedings until this Court adjudicates the declaratory judgment action.

Report and Recommendation (10/6/05) at 1-2.

By Order dated October 27, 2005, Judge Munley adopted the Report and Recommendation, denied Defendants' Motion to Dismiss and stayed the Arbitration. On November 14, 2005, Defendants filed an Answer which included a Counterclaim. Incredibly, the Counterclaim simply duplicated those claims raised by Defendants in the Arbitration. Plaintiffs filed a

Motion to Dismiss the Counterclaim on December 4, 2005. By Order and Opinion Dated February 7, 2006, this Honorable Court granted Plaintiffs' Motion and dismissed the Counterclaim. This Court explained:

> We agree with Plaintiffs that the claims Defendants assert in their Counterclaim can only be decided at arbitration. We also agree with Plaintiffs (Doc. 27, pp. 8-9) that the claims in Defendants' present Counterclaim were conditional on their success with respect to their motion to compel arbitration, which was denied by this Court. (Doc. 17). See *John Hancock Life Ins. Co. v. Wilson*, 254 F. 3d 48, 60 (2d Cir. 2001) ("We hold that the district court properly dismissed the Investors' counterclaims on the ground that they were conditional. ... the Counterclaims were conditional on an adverse decision to their motion to compel arbitration.").
>
> Defendants state that the claims in their Counterclaim include breach of contract, intentional interference with contractual relations, alter ego and unjust enrichment, and that they "either involve the [DC] or Plaintiffs' actions regarding the distribution of the same or similar merchandise." (Doc. 30, p. 5). Defendants argue that, notwithstanding Plaintiffs' success with respect to their declaratory judgment action with this Court, their [Defendants'] counterclaims for intentional interference with economic relations and prospective business advantage will still remain. (*Id.*, p. 6). As discussed below, we agree with Plaintiffs that the arbitration clause in the DC is broad enough to encompass all of Defendants' claims asserted in their Counterclaim. (Doc. 31, pp. 4-5). All of Defendants' claims arise out of and relate to the terms and provisions of the DC. As Plaintiffs explain (*Id.*, pp. 5-6), all of Defendants' claims raised in their Counterclaim are subject to arbitration. Thus, we find that the claims contained in Defendants' Counterclaim fall within the scope of the arbitration clause (noted below) of the DC.

5

> We find that the arbitration clause is applicable to all of the claims asserted by Defendants in their Counterclaim. As the Court in *Nova CTI Carribean v. Edwards*, 2004 WL 35759 (E.D. Pa.) indicated, a tortious interference with contractual relations claim is subject to the arbitration clause. We find that the claims asserted by our Defendants in their Counterclaim are within the arbitration clause of the DC. These claims arise out of and relate to the provisions of the DC. If Defendants succeed in our case and establish that the DC was valid, then all of the claims they assert in their Counterclaim will be decided at Arbitration. We concur with Plaintiffs that the claims Defendants raise in their Counterclaim which arise out of and relate to the terms and conditions of the DC must be decided at Arbitration if the DC is found to be valid. Thus, we find that Defendants' claims in their Counterclaim are arbitrable pursuant to the arbitration clause of the DC.[6]
>
>> 6. As stated in our prior Report and Recommendation, Defendants relied upon the arbitration clause to support their Motion to Dismiss. Based on this former concession of Defendants, we now find that the claims in their Counterclaim are covered by the arbitration clause, which specifically indicated that arbitration was the agreed upon exclusive method to resolve "all disputes, controversies, or claims arising out of or relating to this Agreement or any breach of this Agreement. . . must be final and exclusively settled by arbitration" under the AAA rules. (Doc. 1, Exhibit A, p. 7).
>
> Defendants' Counterclaim is indeed contingent upon its success in this action to establish that the DC was valid. However, if Defendants do succeed on this issue, then the claims Defendants raise in their Counterclaim must be decided at arbitration.

Opinion and Order (2/7/06) at 6-7 (footnotes omitted).

Subsequent to the February 7th Order, the parties engaged in

discovery. To that end, Defendants served Plaintiffs with (1) a Request for Admissions, (2) Interrogatories and (3) a Request for the Production of Documents. Each of these items sought, in part, to obtain information far removed from the issues raised in the Complaint, i.e., whether Eugene Newton was fraudulently induced into signing the DC. To the contrary, they inquired into areas such as whether the DC was breached, which solely relate to the dismissed counterclaim. Such inquires are totally irrelevant to this case and would only benefit Defendants in preparing for their desired arbitration.

Defense counsel has also indicated a desire to depose Plaintiffs. Plaintiffs counsel agreed to these depositions so long as the area of inquiry is limited to the issues raised in the Complaint, i.e., whether Eugene Newton was fraudulently induced into signing the DC. While no Notice of Deposition has been issued, Defense counsel indicated an intention to inquire into areas far beyond the issues raised in the Complaint. Again, Defense Counsel seeks to inquire into areas solely related to the dismissed counterclaim.

Based upon the foregoing, Plaintiffs (1) objected to all of the written discovery requests which did not relate to the Complaint and (2) filed a

7

Motion for Protective Order seeking to limit the area of deposition inquiry to those events which occurred prior to the DC's signing. Defendants have not yet filed a Motion to Compel regarding the written discovery.

A phone conference took place on June 22, 2006, wherein this Honorable Court indicated that it would like to the parties to address both Plaintiffs' Motion for Protective Order and Defendants' anticipated Motion to Compel via these proceedings. During the phone conference, Defense Counsel argued that the desired discovery was proper because Plaintiffs allegedly breached the DC which somehow allows defendants to raise the doctrine of "unclean hands" as a defense.

Despite subsequent discussions, counsel have been unable to resolve the discovery issues amongst themselves. Consequently, Plaintiffs file this Brief and request oral argument.

## II. QUESTIONS PRESENTED FOR REVIEW

**A. WHETHER DISCOVERY IS PROPER WHERE IT IS DESIGNED AS THE RESULT OF ULTERIOR MOTIVES TO OBTAIN INFORMATION THAT IS COMPLETELY UNRELATED TO THE MATERIAL ISSUES OF THIS LITIGATION.**

**SUGGESTED ANSWER:        NO**

### III. ARGUMENT

**A. DEFENDANTS' DISCOVERY REQUESTS ARE IMPROPER SINCE THEY ARE DESIGNED AS THE RESULT OF ULTERIOR MOTIVES TO OBTAIN INFORMATION THAT IS COMPLETELY UNRELATED TO THE MATERIAL ISSUES OF THIS LITIGATION.**

Rule 1 of the Federal Rules of Civil Procedure requires that all rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fidelity Deposit Co. v. McCulloch, 168 F.R.D. 56, 526 (E.D. Pa. 1996). Discovery is no exception. Moreover, the 2000 amendments to the Federal Rules of Civil Procedure significantly limited the scope of discovery. Two concepts regarding "relevance" are critical and marked a substantial shift from the former rules.

First, Rule 26(b)(1) now provides that "relevancy" is no longer broadly defined with reference to the "subject matter involved in the pending action" as it was in the prior version of the rule. Now, to be discoverable, information must be "relevant to the claims or defense of any party...." The 2000 Advisory Committee Notes confirm the intent behind the amendment: "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the

pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R.Civ. P. 26, 2000 Advisory Committee Notes. Further, the Advisory Committee Notes stress that "[t]he Committee intends that the parties and the court focus on the actual claims and defenses involved in the action." Id.

Second, under Rule 26(b)(1) information reasonably calculated to lead to the discovery of admissible evidence must first be "relevant information" to be discoverable. Again, the Committee Notes underscore this point:

> The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible evidence" standard set forth in this sentence might swallow any other limitation on the scope of discovery. Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence....

Fed. R.Civ. P. 26, 2000 Advisory Committee Notes (emphasis added). The Advisory Committee Notes to the Rule further explain that the Rule was amended in 2000 in part "to involve the court more actively in regulating

the breadth of sweeping or contentious discovery." Fed. R.Civ. P. 26, 2000 Advisory Committee Notes.

Further, Rule 26(c) authorizes the Court to enter a protective order to shield Plaintiffs "from annoyance, embarrassment, oppression or undue burden or expense."  A protective order may be warranted if a party propounds discovery that is not relevant to the claim or defense of any party.  See United Steelworkers of Am. v. Allegheny Ludlum Corp., 2002 WL 31002836, *2, 2002 U.S. Dist. LEXIS 17816, *3 (W.D.Pa., May 29, 2002).

To that end, the United States Supreme Court has specifically ruled that "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352, 98 S.Ct. 2380, 2390 (1978).  This is precisely what is occurring in the case at hand.  Defendants seek to obtain information related to their claims that Plaintiffs breached the Distributor Contract.  Those claims, however, were raised in the context of Defendants' counterclaim.  As explained above, the counterclaim was dismissed by this Court's Order dated February 7, 2006.

This Court has been very clear in defining exactly what is at issue in this case. The only matter before this Court is whether "the DC is null and void *ab initio* since [Plaintiffs] were fraudulently misled into executing it and misled by Defendants that LFYI was a legal entity and operating corporation when in fact it never actually existed." Report and Recommendation (10/6/05) at 5. Whether the DC was breached simply is not at issue.[1] Accordingly, information regarding an alleged breach of contract is necessarily irrelevant and not discoverable. See Oppenheimer, supra; United Steelworkers, supra ("Protective Order issued which "prevented Defendant from deposing [witnesses] regarding matters relating only to arbitrable issues.").[2]

Defendants attempt to establish the relevance of the breach of contract information by pointing to their unclean hands defense. This assertion amounts to nothing more than a red herring. Simply put, any

---

[1] We must also keep in mind that this Court has ruled that if the alleged breach of contract claim ever becomes ripe for resolution, it may only be decided at arbitration.

[2] It should also be noted that Plaintiffs are greatly prejudiced and burdened by Defendants' discovery requests. Keep in mind that Defendants' requests relate directly and solely to the issues they wish to advance at arbitration. Ordinarily, discovery related to arbitrable issues should be decided by the arbitrator. Defendants seek to bypass this procedure and gain an unfair advantage over Plaintiffs in the event this case ever reaches the arbitrator.

breach of contract would be too remote from the subject matter of the Complaint and cannot support an unclean hands defense.

The District Court for the Eastern District of Pennsylvania has explained: "To sustain the defense of unclean hands [defendant] must establish misconduct on the part of the plaintiff which is in reference to the **very matter in controversy** and not merely remotely or indirectly connected with it. The courts of Pennsylvania interpret this rule narrowly and are loathe to bar relief except where the plaintiff's conduct is clearly on point..." <u>John Wright, Inc. v. Casper Corp.</u>, 419 F.Supp. 292, 324 (E.D.Pa. 1976) (emphasis added) (quotations omitted).

More recently, the Third Circuit Court of Appeals explained:

> In our view, the primary principle guiding application of the unclean hands doctrine is that the alleged inequitable conduct must be connected, *i.e.,* have a relationship, to the matters before the court for resolution. We will not refuse relief to a party merely because it has engaged in misconduct which is unrelated to its claims before the court. Only when "some unconscionable act of one coming for relief has immediate and necessary relation to the equity that" the party seeks, will the doctrine bar recovery....
>
> The precedents that we find controlling make clear that there must be a relationship between the inequitable conduct **and the claims brought before the court** in order for the doctrine to apply; even then, the court has discretion to limit the reach of the doctrine to only some of the claims.

13

> \* \* \* \*
>
> Where this Court *has not* applied unclean hands, the misconduct alleged *has not* been directly related to the subject of the plaintiff's suit.

In re New Valley Corp., 181 F.3d 517, 525 (3rd Cir. 1999) (quotations omitted) (emphasis added).  See also Monsanto Co. v. Rohm & Haas Co., 456 F.2d 592, 598 (3rd Cir. 1972).

More specifically, the Third Circuit has held that a proper unclean hands defense "requires a showing by defendant that plaintiff's conduct is inequitable and that it **involves the subject matter of the plaintiff's claim.**" Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., Inc., 747 F.2d 844, 855 (3rd Cir. 1984) (emphasis added).  See also MedPointe Healthcare Inc. v. Hi-Tech Pharmacal Co., 380 F.Supp.2d 457, 463 (D.N.J. 2005) ("Third Circuit has not applied unclean hands, the misconduct alleged has not been directly related to the subject of the plaintiff's suit."); Jiffy Lube Intern., Inc. v. Jiffy Lube of Pennsylvania Inc., 1992 WL 13682, *11 (E.D.Pa. 1992) ("the misconduct must have a direct nexus with the right asserted by plaintiff"); Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P., 292 F.Supp.2d 594, 610 (D.N.J. 2003) ("[C]ourts do not apply the

unclean hands doctrine just because plaintiffs have engaged in *some* inequitable conduct; rather, the inequitable conduct identified by the defendant must evince a very close nexus to the defendant's own misconduct that initially gave rise to the suit.  That is, the "plaintiff's conduct [must be both] inequitable and ⋯ involve[ ] the subject matter of the plaintiff's claim.").

Here, the subject matter of Plaintiffs' Complaint (the matter in controversy) involves whether the DC is void *ab initio* based upon fraud in the inducement.  The misconduct which forms the basis of Defendants' unclean hands defense, however, is their assertion that the DC, if valid, was subsequently breached by Plaintiffs.  These items clearly have neither an immediate nor necessary relation.  To the contrary, the subject matter of the Complaint necessarily negates the alleged misconduct.  If the DC is void *ab initio*, there can be no breach of contract by Plaintiffs.  Moreover, whether Plaintiffs breached the DC has absolutely no bearing on whether Plaintiffs were fraudulently induced into signing the DC.  Finally, this Court has already determined that these issues are separate and distinct and must be decided by separate and distinct tribunals.

In light of the above, it is clear that Defendants' unclean hands defense is improper and must fail.

## IV.  CONCLUSION

Based on the above legal authority, it is clear that any effort to raise the defense of "unclean hands" is both factually irrelevant and legally improper.  Accordingly, Plaintiffs request a protective order limiting discovery inquiries to those events which occurred prior to the signing of the Distributor Contract.

                                                Respectfully submitted,
                                                /s/  Nicholas Charles Haros
                                                NICHOLAS CHARLES HAROS, ESQ.
                                                    Attorney I.D. #76195
                                                802 Main Street
                                                Stroudsburg, PA  18360
                                                (570) 424-9800

                                               Attorneys for Plaintiffs

Date July 6, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served the foregoing document upon the parties by Electronic Case Filing System:

Justin G. Weber, Esquire
Pepper Hamilton, LLP
200 One Keystone Plaza
North Front and Market Streets
Post Office Box 1181
Harrisburg, PA 17108-1181
*weberjg@pepperlaw.com*

**YOUNG & HAROS, LLC**

By:  /s/ Nicholas Charles Haros, Esquire
    Nicholas Charles Haros
    Attorney I.D. # PA 76195

Date: July 6, 2006