UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELEGANT MOMENTS, INC., et al., | : | CIVIL ACTION NO. **3:CV-05-0966** |
| Plaintiffs, | : | |
| v. | : | Magistrate Judge Blewitt |
| NANCY DIMICK, et al., | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

**I. Procedural History.**

This action was  filed on May 12, 2005 by Plaintiffs Elegant Moments, Inc., Eugene Newton, Sr. and Susan Newton against Defendants Nancy Dimick and Karen Lasky.  This Court has diversity jurisdiction  under 28 U.S.C. § 1332(a).  (Doc. 1, p. 2).  Plaintiffs seek a Declaratory Judgment pursuant to 28 U.S.C. §§ 2201-2202 concerning the rights, obligations and liabilities of the parties under a Distributor Contract ("DC").   The Defendants had  previously instituted an arbitration proceeding against Plaintiffs with respect to the Distributor Contract which was pending before the American Arbitration Association ("AAA").  Plaintiffs, in addition to their Complaint for Declaratory Judgment, also petitioned this Court to stay the arbitration commenced by Defendants against them.  (Doc. 1, p. 1).[1]  Defendants filed a Motion to Dismiss in response to the Complaint.  On October 27, 2005, the District Court denied Defendants' Motion and stayed the Arbitration. (Doc. 17).[2]

---

1.    The Arbitration which Defendants commenced against Plaintiffs with the AAA was filed on March 24, 2005.

2.    On July 20, 2005, Plaintiffs filed a Motion for Preliminary Injunction ("PI") seeking this Court to stay the Arbitration proceedings Defendants commenced against them until their (Plaintiffs') declaratory judgment action filed with this Court was decided. (Doc. 6).  The District Court granted Plaintiffs' PI Motion and stayed the Arbitration. (Doc. 17).

Defendants then filed their Answer to the Complaint, which also contained Affirmative Defenses and a Counterclaim.  (Doc. 20).[3]

On December 4, 2005, Plaintiffs  filed a Motion to Dismiss Defendants' Counterclaim, arguing that it merely replicated the claims that Defendants raised in the Arbitration which was stayed by the District Court.  (Doc. 24).  Plaintiffs' Motion was  briefed. (Docs. 27, 30 & 31).  On February 7, 2006, the Court issued a Memorandum and Order in which Plaintiffs' Motion to Dismiss Defendants' Counterclaim was granted.  (Doc. 32).

Thereafter, discovery ensued.  Defendants submitted to Plaintiffs a Request for Admissions, Interrogatories and a Request for Production of Documents.  Defendants state that they seek discovery in support of their unclean hands defense, and regarding Plaintiffs' conduct after execution of the DC, *i.e.*, whether Plaintiffs' conduct amounted to bad faith and constituted a breach of the DC.  (Doc. 39, pp. 1-2).  Defendants claim that their broader discovery requests are permissible and seek relevant information since they are attempting to show that Plaintiffs breached the DC, thus allowing them to raise the doctrine of unclean hands as a defense.  Defendants state that they also seek discovery of facts after the DC was executed including whether Plaintiffs ratified the DC.  (*Id*.).  Defendants contend that their discovery requests are  directly related to their defenses.  Defendants also note that they have agreed to narrow their discovery requests as well as their deposition questions to Plaintiffs "to questions involving only the territory covered by the Agreement [DC]."  (*Id*., p. 2, n. 2).

Plaintiffs have objected to Defendants' stated discovery requests, which they felt did not relate to their Declaratory Judgment action, and filed the present Motion for Protective Order **(Doc. 35),** seeking the Court to limit the scope of Defendants' deposition questions to them to the events which occurred before the DC was executed.  (Doc. 38, pp. 7-8).  Plaintiffs argue that the only relevant issues presented in their Complaint is whether Plaintiff Eugene Newton

---

3.    This case was originally assigned to United States District Judge James M. Munley and referred to the undersigned for pretrial management.  Subsequently, the parties consented to proceed before the undersigned for all matters pursuant to 28 U.S.C. § 636(c). (Docs. 28 & 29).

was fraudulently induced into signing the DC.  Plaintiffs contend  that to the extent Defendants'

discovery requests (as well as Defendants' anticipated deposition questions posed to Plaintiffs)

seek to obtain information not related to the issues raised in the Complaint, such as whether the

DC was breached, these requests are not relevant to this action and only serve to assist

Defendants in preparing for their arbitration.  (*Id.*).

    Both parties acknowledge that Defendants will be deposing the Plaintiffs, but they do

not agree on the scope of the area of inquiry that is relevant to this case.  To this end, Plaintiffs

have flied their instant Motion for a Protective Order.  To date, the Defendants have not filed a

motion to compel Plaintiffs to fully respond to their written discovery requests mentioned

above.   The Court conducted a telephone conference with counsel for the parties on June 22,

2006, in order to try and resolve the discovery disputes stated above.   The Court directed

counsel to brief the Plaintiffs' Motion for a Protective Order, as well as the relevancy of

Defendants' written  discovery requests to which Plaintiffs have objected, without requiring

Defendants to file a Motion to Compel.  The Court indicated that the disposition of Plaintiffs'

Motion will delineate the scope of discovery between the parties thus alleviating the need for

Defendants to file a Motion to Compel.

    As directed, Plaintiffs filed their Brief on July 6, 2006 (Doc. 38), and Defendants filed

their Brief on July 24, 2006.  (Doc. 39).  Thereafter, on August 7, 2006, Plaintiffs filed a Reply

Brief.  (Doc 40).[4]

---

4.    While Plaintiffs initially requested oral argument, and the Court scheduled argument for
August 30, 2006, Plaintiffs later withdrew their request seeking to proceed on the briefs, and the
Court cancelled argument.  (Doc. 42).  The Court concurred with Plaintiffs' counsel that the
briefs of the parties sufficiently addressed the present discovery disputes.
    We also note that during the July 22 telephonic conference, the case management
deadlines were extended, including the discovery deadline, which was extended to October
15, 2006.  (Doc. 37).  Thus, we give expedited consideration to the discovery disputes.

**II.  Background.**

   As Plaintiffs recount in their Brief (Doc. 38, pp. 1-4), we have detailed the factual

history of this case in our October 6, 2005,  Report and Recommendation, Doc. 16, pp. 3-5, in

which we stated as follows:

> On or about November 1, 2003, Eugene Newton, Sr., as President
> of Elegant Moments, Inc., a Pennsylvania corporation, signed a Distributor
> Contract ("DC").  The Distributor Contract was entered into between
> Elegant Moments, Inc. as Manufacturer and Lingerie 4 You International,
> Inc. ("LFYI"), referred to as Distributor, with its principal place of business
> in Las Vega, Nevada. (Doc. 1, Ex. A).  Both Defendants Dimick and Lasky
> signed the Distributor Contract, the former as President and the latter as
> Vice President of Lingerie 4 You International, Inc. (*Id.*, p. 10).  Neither
> Dimick nor Lasky signed the DC in their individual capacities.  Plaintiffs
> aver that at all relevant times, they believed that Lingerie 4 You
> International, Inc. was a legal and operating corporation.  Under the
> DC, Elegant Moments, as manufacturer, was to provide LFYI with
> intimate apparel and LFYI, as distributor, was in turn to distribute, to
> promote, and to sell the apparel to customers in Japan.
>
> After the DC was executed, Defendants claimed that Plaintiffs
> breached the agreement and filed suit against them in the United States
> District Court for Nevada on February 3, 2005.  This case captioned
> as *Nancy Dimick, et al. v.  Elegant Moments, Inc., et al.*, was docketed to
> Civil No. 05-0134, D. NV.  Plaintiffs were served with Defendants'
> Nevada suit and subsequently, Plaintiffs advised Defendants that
> since Defendants were signatories to an arbitration clause in the
> DC they (Plaintiffs) would file a motion to compel arbitration if the
> Nevada suit was not dismissed as to them (Plaintiffs).  (Doc. 8, Ex.
> A, pp. 1-2).  Defendants then dismissed the Nevada suit against
> Plaintiffs on March 16, 2005.
>
> On or about March 24, 2005, Defendants filed a demand
> for Arbitration with the AAA, alleging that Plaintiffs breached the DC.
> (Doc. 1, Ex. B).  On May 2, 2005, Plaintiffs filed their answer to
> the arbitration demand of Defendants.  (Doc. 1, Ex. C).  Plaintiffs
> responded in part that the Claimants, Dimick and Lasky were not
> parties to the DC and thus were not proper parties to the Arbitration,
> and that "Lingerie 4 You" was not a party to the DC and thus not a
> proper claimant in the Arbitration.  Plaintiffs asserted that only Lingerie 4
> You, Inc. ("LFYI") and Elegant Moments, Inc. were parties to the DC.
> (Doc. 1, Ex. C).  The Arbitration case then proceeded to an administrative
> conference and selection of an arbitrator.  (Doc. 8, Ex. A, p. 3).

On May 2, 2005, counsel for Defendants in the Arbitration case faxed a letter to Plaintiffs' counsel indicating that Defendants' arbitration demand incorrectly named Lingerie 4 You as a claimant and indicated that the proper claimants in the Arbitration case were LFYI and Dimick and Lasky, its principals.  (Doc. 1, Ex. D).  The fax letter also identified LFYI as a "Nevada general partnership" and not as a Nevada corporation.  (*Id*.).

During the pendency of the Arbitration case, Plaintiffs instituted this Declaratory Judgment action in this Court and Petition to Stay the Arbitration.  Plaintiffs seek this Court to determine if there exists a valid and enforceable contract between the parties named herein, notwithstanding their agreement in the DC to resolve contract disputes through arbitration and their invocation of the arbitration clause in the DC when the Defendants filed suit against them for breach of contract in Nevada District Court.  As mentioned, it is the Defendants' position that Arbitration is the recognized and agreed to method to determine if a breach of the DC occurred, and not this declaratory judgment action Plaintiffs filed with this Court.  Defendants state that the Arbitration action has already been filed with the AAA pursuant to the binding provision in the DC with identical issues to the instant case and is proceeding, and that this arbitration action can provide Plaintiffs with all of the relief which they are seeking in the present case, including a declaratory judgment.  Defendants point out that Plaintiffs themselves have already previously invoked the arbitration provision of the DC, which resulted in the Defendants' dismissal of the their federal action in Nevada and the commencement of the Arbitration case with the AAA.

Plaintiffs concede that they would have compelled arbitration pursuant to the DC in Defendants' Nevada federal suit against them for breach of contract, but argue that at the time, they thought that LFYI was an operating legal corporation.  Plaintiffs state that only after Defendants discontinued their federal suit in Nevada and filed their Arbitration demand with the AAA, *i.e.* when they received the referenced May 2, 2005 fax letter from Defendants' Arbitration counsel, did they (Plaintiffs) discover that LFYI was not incorporated and was a fiction.  Plaintiffs argue that they would never had signed the DC with Defendants if they knew that LFYI was not a legal corporate entity and that Defendants fraudulently misrepresented to them that LFYI was indeed a legal corporation in order to dupe them into signing the DC.  (Doc. 12, Ex. A, Newton Affidavit, ¶ 19.).  Thus, Plaintiffs contend that the Defendants intentionally misrepresented the essential terms of the DC (*i.e.* fraud in the execution) and that Mr. Newton, as president of Elegant Moments, signed the DC without knowing material facts at the time.  Therefore, Plaintiffs argue that the DC, which they claim was executed without knowledge of the fraud perpetrated upon them by Defendants, is null and void.  Hence, according to Plaintiffs, if the DC is null and void *ab initio,* then the Arbitration clause contained therein is also null and void and not enforceable against them.  (Doc. 1, p. 7,  ¶ 25.).  Plaintiffs filed

the present Declaratory Judgment action for precisely this reason, *i.e.* to request this Court to find that the DC is null and void *ab initio* since they were fraudulently misled into executing it and misled by Defendants that LFYI was a legal entity and operating corporation when in fact it never actually existed.  Plaintiffs also seek in the present case an order that Defendants be permanently barred from arbitrating any claims arising under the DC against them.

(Footnotes omitted).

Moreover, as we previously indicated in our October 6, 2005, Report and

Recommendation (Doc. 16, pp. 1-2):

Basically, Plaintiffs assert that this Court should determine if there exists a valid and enforceable contract between the parties under the Distributorship Agreement or Contract ("DC").  Defendants claim that this issue is subject to the Arbitration case involving the parties which is already pending with the AAA and that Plaintiffs' present declaratory judgment action should be dismissed.  Plaintiffs claim that Defendants fraudulently misrepresented them into believing that Lingerie 4 You International, Inc. ("LFYI") was a legal corporation when it never was a lawful entity and that this fraud in the execution voided the DC, including the arbitration clause, thus barring Defendants from compelling arbitration of this case under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16. The issues with which we are now presented are whether the alleged fraudulent conduct of Defendants, which Plaintiffs claim preclude Defendants from compelling arbitration since this conduct rendered the DC void *ab initio,* should be considered by this Court and not by the arbitrator, and whether this determination should be made by this Court prior to the arbitration case proceeding any further.  As discussed below, we find that the Plaintiffs' claim that the DC was rendered void *ab initio* must be resolved by this Court, and therefore, we shall recommend that Defendants' Motion to Dismiss be denied, that Plaintiffs' Motion for Injunction be granted, and that the Court stay the pending Arbitration proceedings until this Court adjudicates the declaratory judgment action.

In our February 7, 2006 Memorandum (Doc. 37, pp. 6-7), we stated as follows:

We agree with Plaintiffs that the claims Defendants assert in their Counterclaim can only be decided at arbitration.  We also agree with Plaintiffs (Doc. 27, pp. 8-9) that the claims in Defendants' present Counterclaim were conditional on their success with respect to their motion to compel arbitration, which was denied by this Court.  (Doc. 17). *See John Hancock Life Ins. Co. v. Wilson*, 254 F. 3d 48, 60 (2d Cir. 2001) ("We hold that the district court properly dismissed the Investors' counterclaims on the ground that they were conditional. ...   the Counterclaims were conditional on an adverse decision to their motion

to compel arbitration."). Defendants state that the claims in their Counterclaim include breach of contract, intentional interference with contractual relations, alter ego and unjust enrichment, and that they "either involve the [DC] or Plaintiffs' actions regarding the distribution of the same or similar merchandise." (Doc. 30, p. 5). Defendants argue that, notwithstanding Plaintiffs' success with respect to their declaratory judgment action with this Court, their [Defendants'] counterclaims for intentional interference with economic relations and prospective business advantage will still remain. (*Id.*, p. 6). As discussed below, we agree with Plaintiffs that the arbitration clause in the DC is broad enough to encompass all of Defendants' claims asserted in their Counterclaim. (Doc. 31, pp. 4-5). All of Defendants' claims arise out of and relate to the terms and provisions of the DC. As Plaintiffs explain (*Id.*, pp. 5-6), all of Defendants' claims raised in their Counterclaim are subject to arbitration. Thus, we find that the claims contained in Defendants' Counterclaim fall within the scope of the arbitration clause (noted below) of the DC.

We find that the arbitration clause is applicable to all of the claims asserted by Defendants in their Counterclaim. As the Court in *Nova CTI Carribean v. Edwards*, 2004 WL 35759 (E.D. Pa.) *4, indicated, a tortious interference with contractual relations claim is subject to the arbitration clause. We find that the claims asserted by our Defendants in their Counterclaim are within the arbitration clause of the DC. These claims arise out of and relate to the provisions of the DC. If Defendants succeed in our case and establish that the DC was valid, then all of the claims they assert in their Counterclaim will be decided at Arbitration. We concur with Plaintiffs that the claims Defendants raise in their Counterclaim which arise out of and relate to the terms and conditions of the DC must be decided at Arbitration if the DC is found to be valid. Thus, we find that Defendants' claims in their Counterclaim are arbitrable pursuant to the arbitration clause of the DC.

(Footnotes excluded).

This Court concluded as follows:

Defendants' Counterclaim is indeed contingent upon its success in this action to establish that the DC was valid. However, if Defendants do succeed on this issue, then the claims Defendants raise in their Counterclaim must be decided at arbitration. Thus, we find no prejudice to Defendants, since if they are successful in the action now before the Court and it is decided that the DC is valid, they can assert all of their stated counterclaims in Arbitration, as they are all arbitrable issues and these claims were intended to fall within the arbitration provision of the DC.

(*Id.*, pp. 7-8). (Footnotes excluded).[5]

---

5.    As we stated in our prior Report and Recommendation (Doc. 16):

**III. Standard.**

As the Court stated in *Nike, Inc. v. Brandmania.com, Inc.*, 2002 WL 32348549, * 1-
*2 (E.D. Pa.):

> Rule 37(d) provides that the failure to serve proper discovery responses
> may not be excused on the ground that the discovery sought is
> objectionable unless the party failing to act has a pending motion for
> a protective order as provided by Rule 26(c).  Rule 26(c) permits a
> party from whom discovery is sought to seek from the court, for good
> cause shown, "any order which justice requires to protect a party or
> person from annoyance, embarrassment, oppression, or undue
> burden or expense."  The court's order may include terms precluding
> or limiting discovery, and may provide "that a trade secret or other
> confidential research, development, or commercial information may
> not be revealed or be revealed only in a designated way."  Rule 26(c)(8).
>
> Finally, Rule 26(b)(5) sets forth the procedure for protecting
> privileged matter.  It requires the party claiming the privilege to
> describe in his response the nature of the allegedly privileged
> matter with enough specificity to permit the other parties to assess
> the applicability of the privilege.

*See also Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005) (Pursuant to Rule 26(c), "a court
'for good cause shown,' may, in certain circumstances, enter a protective order in the context of
discovery.").[6]

---

This action arises out of Plaintiffs' alleged breach of the DC.  It raises issues as to the
proper forum for adjudicating the breach of contract claims Defendants assert against Plaintiffs
and as to whether this Court or the Arbitrator should decide if the DC is null and  void (or only
voidable as Defendants claim), and if the Plaintiffs executed the DC due to Defendants' alleged
fraudulent misrepresentation about the true legal nature of the Distributor (*i.e.* LFYI).
**The District Court has held that this Court must decide if the DC was void *ab initio*.**
(Emphasis added).

6.   Under Rule 37(d), a court order is required to render documents protected. *See Nike Inc.,*
*supra.* at * 2.  Plaintiffs have  filed a Motion for a Protective Order with respect to the stated
discovery disputes concerning the scope of issues which are relevant  to this case.  As noted, we
also consider the scope of discovery with respect  to the Defendants' written discovery requests
without having required Defendants to file a Motion to Compel.

Insofar as the standard for a Motion to Compel is at issue with respect to the dispute over Defendants' written discovery requests to which Plaintiffs have objected, as the Court stated in *Korescko v. Bleiweis*, 2004 WL 2005785, * 1 (E.D. Pa.):

> The Federal Rules of Civil Procedure are liberal with respect to discovery, permitting the requesting party to obtain even inadmissible material, as long as it is relevant to the claim or defense of any party, unprivileged, and reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).
>
> Federal Rule 33 requires a party served with interrogatories to respond to each within 30 days after they were served. Rule 33(b)(1) and (3). The party serving the interrogatories may move under Rule 37(a) to compel an answer to an interrogatory to which the receiving party has objected or which it has otherwise failed to answer. Rule 33(b)(5).
>
> Similarly, Federal Rule 34 requires that a party served with a document request either produce the requested documents or else state a specific objection for each item or category objected to. Here, again, if the party served fails to respond adequately to a document request, the serving party may file a motion to
>
> compel under Rule 37(a). Fed.R.Civ.P. 34(b), 37(a)(1)(B).

## IV. Discussion.

Plaintiffs frame the current discovery dispute as centering on whether the relevant area of inquiry, which they claim is limited to the issues raised in their Complaint, is if Eugene Newton was fraudulently induced into executing the DC. In fact, Plaintiffs counsel represents that he has agreed to Plaintiffs' depositions if they are limited to the events which occurred before the signing of the DC. (Doc. 38, p. 7). However, Plaintiffs counsel indicates that no agreement has been reached with respect to the Plaintiffs' depositions since Defendants counsel seeks to question Plaintiffs about issues not raised in their Complaint. In particular, Plaintiffs argue that Defendants seek to inquire into matters that relate only to their dismissed Counterclaim. Thus, Plaintiffs filed their present Motion seeking the Court to issue a protective order limiting discovery inquiries to those events which occurred prior to the signing of the DC.

Defendants state that they seek discovery to support their unclean hands defense and their claim that Plaintiffs' bad faith conduct with respect to the DC constituted a breach of it. Defendants state that they also seek discovery of other information after the DC was signed such as evidence relating to whether Plaintiffs ratified the DC. (Doc. 39, pp. 1-2). Defendants maintain that the discovery they seek is directly related to their defenses. They also note, as stated, that they have offered to narrow the scope of their discovery requests and deposition questions to matters involving the territory covered by the DC. (*Id*., p. 2, n. 2). Defendants frame their defense in this case as whether Plaintiffs, after the DC was signed, refused to abide by the DC authorizing Defendants to exclusively sell Plaintiffs' products to Japan by purposefully breaching the DC and selling their products to territory covered by the DC. As a result of Defendants' belief that Plaintiffs were engaging in conduct which was a breach of the DC, Defendants filed an action against Plaintiffs which is currently in arbitration. Defendants contend that while their arbitration was pending, Plaintiffs developed their present theory that the DC was void *ab initio,* and filed the instant declaratory judgment action with this Court. (*Id*., p. 2). Defendants state that they asserted the defense of unclean hands in their Answer to the Complaint (Doc. 20).[7] Defendants argue that Plaintiffs are now attempting to prevent them from seeking any discovery with respect to their unclean hands defense and any discovery regarding events that occurred after the DC was signed, i.e. evidence to support Defendants' theory that Plaintiffs began to intentionally breach the DC by selling their products within territory subject to the DC (Japan).

Plaintiffs contend that Defendants are seeking information in their discovery requests that is completely unrelated to the issues of this case as previously specified by this Court, *i.e.,*

---

7. It is undisputed that Defendants have asserted as an affirmative defense in their Answer to the Complaint the unclean hands doctrine. It is also undisputed that Plaintiffs have not, to date, moved to strike this defense by filing a motion for partial summary judgment. Doc. 40, p. 6, n. 6.

whether the DC is null and void *ab initio* based on Plaintiffs' claim that they were fraudulently

mislead by Defendants into executing it by leading them to believe that LFYI was a legal entity

and operating corporation.  (Doc. 38, 12).  Plaintiffs also assert that the 2000 amendments to

the Federal Rules of Civil Procedure significantly limited the scope of discovery.  (Doc. 38,  p.

9).

        As this Court stated in *Grider v. Keystone Health Plan Central, Inc.*, 2005 WL

2030456, * 2 (M.D. Pa. 2005):

> "The Federal Rules of Civil Procedure permit discovery of 'any matter,
> not privileged, that is relevant to the claim or defense of any party.'
> Fed.R.Civ.P. 26(b)(1).  Relevancy is to be construed broadly, and
> discovery is not limited only to admissible evidence, but rather extends
> to any information that 'appears reasonably calculated to lead to the
> discovery of admissible evidence.' *Id*.  'Although courts have imposed
> broader restrictions on the scope of discovery when a non-party is
> targeted, discovery rules are to be accorded broad and liberal
> construction.' *Packer v. Hansen*, 1999 U.S. Dist. LEXIS 17618, at
> *8-9 (E.D. Pa. Nov. 12, 1999)."

        Further, the Court in *Celmer v. Marriot Corp.,*, 2004 WL 1822763,* 1 (E.D. Pa.

2004), stated:

> "Pursuant to Federal Rule of Civil Procedure 26(b)(1), a party may
> seek discovery of 'any matter, not privileged, which is relevant to
> the subject matter in the pending action.' Fed.R.Civ.P. 26(b)(1).  'The
> information sought need not be admissible at the trial if the
> information appears reasonably calculated to lead to the discovery of
> admissible evidence.' *Id*.  Further, '[i]t is well recognized that the
> federal rules allow broad and liberal discovery,' *Pacitti v. Macy's*,
> 193 F.3d 766, 777 (3d Cir. 1999), and relevancy is broadly construed.
> *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) ('The
> court should and ordinarily does interpret 'relevant' very broadly
> to mean matter that is relevant to anything that is or may become an
> issue in the litigation.')."

        In *Waters v. Genesis Health Ventures, Inc.*, 2004 WL 1427143, * 1 (E.D. Pa. 2004),

the Court stated:

> "It is well-established that the scope and conduct of discovery are
> within the sound discretion of the trial court." *Gaul v. Zep Mfg. Co.*,
> Civ. A. No. 03-2439, 2004 U.S. Dist. LEXIS 1990, at * 2-3 (E.D.
> Pa. Feb. 5, 2004) (quoting *Marroquin-Manriquez v. Immigration
> and Naturalization Serv.*, 699 F.2d 129, 134 (3d Cir. 1983)).

> Rule 37 "authorizes a party who has received evasive or incomplete answers to discovery authorized by . . . Rule 26(a) to bring a motion to compel disclosure of the materials sought." *Northern v. City of Phila.*, 2000 U.S. Dist. LEXIS 4278, at * 3 (E.D. Pa. Apr. 4, 2000). Once a party opposes a discovery request, the party seeking the discovery must demonstrate the relevancy of the information sought. *Id.* at * 5.  "When this showing of relevancy is made, the burden then shifts back to the party opposing discovery to show why the discovery should not be permitted."  *Id.*  "A party's statement 'that the discovery sought is overly broad, burdensome, oppressive, vague or irrelevant is 'not adequate to voice a successful objection." *Id.* (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). Further, "[i]t is well recognized that the federal rules allow broad and liberal discovery,' *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999), and relevancy is broadly construed.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ('The court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation.)."

We find that Defendants are not entitled to Plaintiffs' responses to its written discovery Requests regarding matters that do not relate to the issue in this case, *i.e.* whether the DC is void *ab initio*, despite Defendants' proffer to narrow them (as well as to narrow Plaintiffs' deposition questions) to the requests involving Plaintiffs' conduct, after the DC was signed, with respect to the territory covered by the DC, *i.e.* Japan.  (Doc. 39, p. 3).  We also find that Defendants should not  be permitted to question Plaintiffs during their depositions regarding matters after the execution of the DC whether or not these matters are within the stated restriction proffered by Defendants.

Further, Plaintiffs argue  that under the 2000 discovery amendment, discovery is limited to a specific claim or defense asserted in the pleadings.  We agree with Plaintiffs and find that Defendants' written discovery Requests that do not relate to the issue in this case, *i.e.* whether the DC is void *ab initio*, and that seek evidence to support Defendants' unclean hands defense and contention that Plaintiffs purposefully breached the DC by selling their products to Japan after the DC was executed, are not proper matters or defenses in this case.[8]

---

8.    As Plaintiffs concede, these issues and this defense may very well be relevant in the arbitration case.

We also agree with Plaintiffs that Defendants attempt to pursue evidence to support their unclean hands defense should be precluded since this  is not a proper defense in this case. Defendants' defenses are more appropriately matters for resolution by the arbitrator.  Such conclusion is clearly supported by our earlier decisions  rendered in this case, as discussed above.  The questions as to if the Plaintiffs breached the DC, if they ratified the DC and if they did not have clean hands, are all questions for the arbitrator to decide and not this Court pursuant to the Court's prior decisions in this case.  Defendants in effect are trying to re-assert their Counterclaim into this case through their challenged discovery requests, which has been previously dismissed by this Court.

As we found with respect to Defendants' Counterclaim, their unclean hands defense and claim that Plaintiffs breached the DC after it was executed are conditional on the outcome of the instant declaratory judgment action.  In the event that Defendants prevail herein, the matters on which Defendants currently seek discovery will be determined by the arbitrator and not this Court.  Thus, we find that Defendants attempt to discover whether Plaintiffs purposefully breached the DC after it was signed by trying to sell their products directly to Japan and whether Plaintiffs' conduct constituted  unclean hands after the DC was signed are not questions for this Court to decide.  Rather, they are questions for the arbitrator to decide.  Any other ruling in this case  would certainly be contrary to this Court's earlier decisions discussed above.[9]

At this juncture, the Court is determining whether the Defendants' discovery requests are relevant to the issue in this case which we have found to be whether the DC is void *ab initio* based on Plaintiffs' claim that Mr. Newton was fraudulently induced into executing it.  The asserted defenses by Defendants which deal with issues that may arise if the DC is found to be

---

9.    During the arbitration case between the parties, Defendants can, of course, pursue any discovery, such as Defendants' present discovery requests, relevant to the questions that must be decided in that forum.

valid, *i.e.* whether Plaintiffs intentionally breached the DC after it was signed by trying to sell their products within the covered territory of the DC, Japan, are not questions which are before this Court, but are questions for the arbitrator.  The Court thus finds that, for purposes of discovery, even the narrowed information Defendants seek from Plaintiffs is not relevant to the issue in this case  or to any defense that may be properly asserted in this case.[10]

We agree with Plaintiffs that if the Court finds the DC to be void *ab initio* and that Mr. Newton was fraudulently induced to execute the DC, then the discovery information which Defendants now seek, including evidence regarding events that occurred after the DC was executed, such as their claim that Plaintiffs intentionally breached the DC by selling their products to Japan, will be of no moment in this case.  (Doc. 38, p. 15).

Therefore, since we find that the discovery sought by Defendants in their written requests, as well as the deposition questions they propose to ask the Plaintiffs, deal with matters that must be decided by the arbitrator and not this Court, we shall grant Plaintiffs' Motion for a Protective Order and limit discovery inquiries to the events which occurred prior to the signing of the DC.  **(Doc. 35).**

---

10.    Defendants argue that Plaintiffs are really trying to have their unclean hands defense dismissed, which is not proper relief with respect to their pending Motion for a Protective Order.  Defendants state that Plaintiffs are seeking relief more appropriate to a partial summary judgment motion. (Doc. 39, p. 6, n. 6).  Defendants note that Plaintiffs should argue *via* a dispositive motion after the close of discovery that Defendants' unclean hands defense should be stricken in this case.  Plaintiffs note in their Reply Brief (Doc. 40, p. 6, n. 2) that if the Court agrees with Defendants' contention, then the Court should stay discovery while Plaintiffs file a partial summary judgment motion aimed at striking Defendants' unclean hands defense.  The Court does not wish to further delay this case by staying discovery.  The parties can certainly raise the matter of Defendants' unclean hands defense when they file their dispositive motions after discovery is closed.  However, the Court finds that a ruling on Plaintiffs' present Motion for a Protective Order without directly dismissing Defendants' stated affirmative defense will suffice for present purposes.  Thus, we will not address Plaintiffs' argument in their present Motion that Defendants' unclean hands defense is misplaced in this case and must fail.  (Doc. 38, pp. 12-16).

An appropriate Order follows.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: September 7,  2006**

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELEGANT MOMENTS, INC., et al., | : | CIVIL ACTION NO. **3:CV-05-0966** |
| Plaintiffs, | : | |
| v. | : | Magistrate Judge Blewitt |
| NANCY DIMICK, et al., | : | |
| Defendants | : | |

## **ORDER**

   **AND NOW,** this 7th day of **September, 2006**, **IT IS HEREBY ORDERED THAT**
Plaintiffs' Motion for a Protective Order  **(Doc. 35)** is **GRANTED.**  It Is further Ordered that
discovery in this case is limited to matters which occurred prior to the signing of the Distributor
Contract.




                                            **s/ Thomas M. Blewitt**
                                            **THOMAS M. BLEWITT**
                                            **United States Magistrate Judge**

**Dated: September 7, 2006**